AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH<br>"shawnnudst@gmail.com" THAT IS STORED AT<br>PREMISES CONTROLLED BY GOOGLE | )<br>)<br>)<br>)<br>)<br>) | Case No. 23- 287M |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A(a)(1) | Transportation of Child Pornography |
| 18 USC 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Randy Mullins
*Applicant's signature*

_____
Randy Mullins, Special Agent, United States Air Force
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date:  ____June 22, 2023____

_____
*Christopher J. Burke*
*Judge's signature*

City and state:  __Wilmington, DE__

_____
Honorable Christopher J. Burke, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
GOOGLE ACCOUNT
"shawnnudst@gmail.com" THAT IS
STORED AT PREMISES CONTROLLED
BY GOOGLE LLC

Case No. 23- 287M

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A SEARCH WARRANT

I, Randy Mullins, a Special Agent with the United States Air Force Office of Special

Investigation ("OSI"), Dover, Delaware, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information

associated with Google account "shawnnudst@gmail.com" (the "TARGET ACCOUNT") that is

stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an

electronic communications service and/or remote computing service provider headquartered at

1600 Amphitheater Parkway, Mountain View, California.  The information to be searched is

described in the following paragraphs and in Attachment A.  This affidavit is made in support of

an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A)

to require Google to disclose to the government copies of the information (including the content

of communications) further described in Section I of Attachment B.  Upon receipt of the

information described in Section I of Attachment B, government-authorized persons will review

that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent ("SA") with OSI and a credentialed federal agent authorized to

investigate violations of the Uniform Code of Military Justice, as well as violations of State and

1

Federal laws where a military nexus exists. I have served with OSI since September 2016 and as a Special Agent since January 2019. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program, the United States Air Force Special Investigations Academy, the Sex Crimes Investigations Training Program, and the National Criminal Justice Training Center Undercover Concepts and Techniques.  I graduated from the Community College of the Air Force in 2019, where I received an associate degree in Criminal Justice.  Since joining OSI, I have served in multiple capacities as a Special Agent and have completed tours as a field level Special Agent, protective service officer, counterintelligence Special Agent, and have served in various supervisory roles.

3.      I currently assist the Delaware Internet Crimes Against Children Task Force (the "Delaware ICAC") with investigations where a military nexus exists.  The primary goal of the Delaware ICAC will be to expand the quantity and quality of detection, investigation, apprehension, and prosecution of electronic communications-facilitated crimes against children.

4.      I have experience in numerous investigative disciplines to include child exploitation, child sexual abuse, various adult sex crimes, cyber-based investigations, financial crimes, narcotics investigations, fraud, and espionage.  I have received substantial training related to child exploitation, narcotics trafficking, online undercover operations, interviewing techniques, surveillance and counter-surveillance techniques, and multiple other criminal investigator-related facets.

5.      As a federal agent, I am authorized to investigate violations of laws of the United States, including Title 18, United States Code, Sections 2252A(a)(1) and 2252A(a)(5)(B), and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

6.     The statements contained in this affidavit are based in part on information and reports provided by U.S. federal law enforcement agents and state law enforcement officers; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents, independent investigation and analysis by law enforcement agents/analysts and computer forensic professionals, and my experience, training, and background as a Special Agent. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish that there is sufficient probable cause for the requested warrant.

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the TARGET ACCOUNT contains evidence of violations of Title 18, United States Code, Section 2252A(a)(1) (Transportation of Child Pornography) and Title 18, United States Code, Section 2252A(a)(5)(B) (Possession of Child Pornography) (hereinafter, the "SPECIFIED FEDERAL OFFENSES"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

8.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## SPECIFIED FEDERAL OFFENSES

9.      As noted above, this investigation concerns alleged violations of the following:

a.      Title 18, United States Code, Sections 2252A(a)(1) prohibits a person from knowingly mailing, transporting, or shipping any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means, including by computer.

b.      Title 18, United States Code, Sections 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

10.     The following definitions apply to this Affidavit and Attachment B:

a.      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.   This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.      "Child erotica," as used herein, means materials or items that are sexually arousing

4

to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

c.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image of picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d.      "Cloud-based storage service," as used herein, refers to a publicly accessible, online storage provider that collectors of depictions of minors engaged in sexually explicit conduct can use to store and trade depictions of minors engaged in sexually explicit conduct in larger volumes.  Users of such a service can share links and associated passwords to their stored files with other traders or collectors of depictions of minors engaged in sexually explicit conduct in order to grant access to their collections.  Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop and laptop computers, mobile phones, and tablets, anywhere and at any time.  An individual with the password to a file stored on a cloud-based service does not need to be a user of the service to access the file.  Access is free and readily available to anyone who has an Internet connection.

e.      "Computer," as used herein, refers to "an electronic, magnetic, optical,

electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, tablets, and mobile phones and devices.  See 18 U.S.C. § 1030(e)(1).

f.      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

g.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

h.      The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i.      A "hash value" (or "hash ID") is a unique multi-character number that is associated with a computer file. Some computer scientists compare a hash value to an electronic fingerprint in that each file has a unique hash value. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, would result in a different hash value. Hash values represent large amounts of data as much smaller numeric values, so they are used with digital signatures.

j.      "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers (ISPs) control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

k.      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations

that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

l.        "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

m.        "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

n.        "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

o.        "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

p.        "Cloud storage" is an online central storage location that allows users to access their files from anywhere using a device connected to the Internet.

q.        "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

r.        A "storage medium" is any physical object upon which computer data can be

recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

s.     "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY, AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND/OR DISTRIBUTION OF CHILD PORNOGRAPHY

11.    Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the Internet to view and transport images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals, including the following:

a.     Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.     Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use

these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer or cellphone, and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

e.      Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.  This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

f.      Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.  This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

12.     Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

a.      Computers, smartphones, and the internet are all methods used by child pornography collectors and those with an interest in sexual encounters with children to interact with and sexually exploit children.

b.      Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e. "Instant Messaging"), easy access to the internet, and online file sharing and storage, electronic devices are the preferred method of distribution and receipt of child pornographic materials.

c.      The internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.  Collectors and distributors of child pornography as well as those with an interest in sexual contact with children use online resources to retrieve and store child pornography and to communicate with children, including services offered by internet portals such as AOL Inc., Yahoo!, Google, Inc., Facebook, Dropbox, Instagram, and others.  The online services allow a user to set up an account with a remote computing service that provides email services, file exchange services, messaging services, as well as electronic storage of computer files in a variety of formats.  A user can set up an online storage account from any computer with access to the internet, including (for example) a smart phone.  Email accounts, online storage accounts, and other online communication accounts allow users

11

to save significant amounts of data.

d.      In my recent investigative experience, as well as recent discussions with law enforcement officers, I know the individuals who collect child pornography are using email accounts, online storage accounts, and other online communication accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

## BACKGROUND CONCERNING GOOGLE[1]

13.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

14.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

15.     Signing up for a Google Account automatically generates an email address at the domain

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

gmail.com. That email address will be the log-in username for access to the Google Account.

16.    Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

17.    Gmail is an Internet based electronic communications system operated by Google.  It permits its users to communicate using e mail through their Gmail service, instant messages, text messages, and group messages through their Hangouts and Voice  services, and other social networking type methods.

18.    Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail.  Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive.  And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

19.    When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address

and means and source of payment. [2]

20.      Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

21.      Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

22.      In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

---

[2] Google Voice provides a phone number for calling, text messaging, and voicemail. It works on smartphones and computers, and syncs across devices. According to Google, Calls, text messages, and voicemails are stored and backed up.

23.     Based on my training and experience, messages, emails, voicemails, photos, and videos are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.  For example, chat and photographic evidence of the distribution of child pornography may be stored in connection with the Google Account even if erased or inaccessible from the physical device.

24.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

25.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

26.     Other information connected to the use of a Google account may lead to the discovery of additional evidence.  For example, the apps downloaded from the Google Play store and general

Web and App Activity may reveal services used in furtherance of the crimes under investigation (e.g., social networking apps known to be frequented by those who have an interest in child pornography).

27.     Therefore, Google's servers are likely to contain evidence of the crimes under investigation, as well as stored electronic communications and information concerning subscribers and their use of Google services.

**PROBABLE CAUSE**

28.     On or about May 30, 2023, OSI received a cybertip from the National Center for Missing & Exploited Children ("NCMEC"). NCMEC's CyberTipline is the nation's centralized reporting system for the online exploitation of children. The public and electronic service providers can make reports of suspected online enticement of children for sexual acts, child sexual molestation, child sexual abuse material, child sex tourism, child sex trafficking, unsolicited obscene materials sent to a child, misleading domain names, and misleading words or digital images on the internet. This cybertip was initiated by Google and reported that the Google account "jenray.shine@gmail.com" uploaded 64 files, 28 of which Google categorized as containing or displaying apparent child pornography. Also, in the cybertip, Google indicated "shawnnudst@gmail.com" (the TARGET ACCOUNT) was associated with, and the backup email for, the "jenray.shine@gmail.com" account.

29.     Google provided both the IP address information for the file uploads, as well as the phone number associated with the "jenray.shine@gmail.com."  Based upon the IP address location and the phone number, it was ascertained that the violations likely occurred in Delaware and were likely associated with Air Force Chief Master Sergeant Paul Michael Wilcox, who was stationed at Dover Air Force Base at the time of the cybertip.  The phone number associated with the

"jenray.shine@gmail.com" account is the same phone number the Air Force has on file for Chief Master Sergeant Wilcox. Additionally, Chief Master Sergeant Wilcox provided the same phone number to the Dover Air Force Base Middle School in February 2022 for an incident involving his daughter.

30.     On or about June 2, 2023, your affiant obtained a federal search warrant to view the files from the cybertip, issued by the Honorable Christopher J. Burke, U.S. Magistrate Judge for the District of Delaware. The search warrant authorized law enforcement to view the 64 files uploaded by the "jenray.shine@gmail.com" account, that Google supplied to law enforcement in their cybertip.

31.     On or about June 5, 2023, your affiant and law enforcement officers from the Delaware ICAC viewed the files from the cybertip originating from the "jenray.shine@gmail.com" account. Examples of some of the files are described as follows:

    a.     report_756700771413750486.jpg – Image depicted a prepubescent white female laying on a bed on a presumed male's legs appearing to being penetrated by the male's penis. The breasts and top of the vagina were visible.

    b.     report_1252333379389055422.png – Image depicted a white female, estimated approximately 8 years old with apparent male ejaculation on her face. The tip of a penis was barely visible at the bottom of the picture.

    c.     report_2369779341270528433.png – Image depicted a prepubescent female of Asian descent, estimated age approximately 6 years old, fully nude, sitting on top a white male. The male's penis was penetrating the female child's vagina.

    d.     report_3870828806190082816.jpg – Image depicted a white female, photographed from behind, on her hands and knees. Her vagina and anus are visible. The photo was taken

from between the legs of an apparent adult male. His penis was visible in the photo. Difficult to determine age of white female but likely a child less than 12 years old.

    e.    report_6536119414713383384.jpg – Image depicted a prepubescent white female, estimated age approximately 6 years old, standing fully nude, holding the penis of a fully nude adult male. The adult male had his arm around the female child. The female child's chest and vagina were visible.

    f.    report_7351389843237274243.jpg – Image depicted a prepubescent white female, fully nude, with her head laying on the stomach of a naked male. The male's penis appeared to touch the female child's lips and nose. It was difficult to determine the age of the male but he could possibly be another child.

    g.    report_9034799750365650241.jpg – Image depicted a prepubescent white female, estimated age approximately 6 years old, laying on her stomach between the legs of an apparent adult male. She was licking the penis of the adult male. She wore a t-shirt and appeared to wear no pants or underwear; however, none of her genitalia was visible.

32.    On or about May 31, 2023, a subpoena was served on Google for information regarding the "jenray.shine@gmail.com" account and the TARGET ACCOUNT. Google responded with information that the "jenray.shine@gmail.com" account was created on March 9, 2023. Additionally, the TARGET ACCOUNT was created on November 27, 2016. The recovery phone for both accounts was the same number that was associated with WILCOX, supra paragraph 29.

33.    In the cybertip, Google reported the following IP address associated to the Google Account upload: 2600:4040:716f:1900:8165:d644:37bc:914a (Login) 05/10/2023 10:01:24 UTC. A check of publicly available records determined that the IP address was assigned to Verizon Communications Corporation ("Verizon"). On or about May 31, 2023, a subpoena was served on

Verizon for subscriber information associated to the IP address.

34.     A response from Verizon provided that the subscriber assigned to the IP address is Paul WILCOX, with a listed address associated with WILCOX's residence; listed phone number as that associated with the Google Account in the cybertip, and verified as belonging to WILCOX; and e-mail address of p.wilcox00@yahoo.com.  Verizon further provided that the account was created on November 3, 2021.  Air Force records show that WILCOX moved to Dover Air Force Base on November 1, 2021, which is two days before the Verizon account was opened. WILCOX lives at his residence with his wife and two minor children, ages 13 and 14.

35.     On or about June 7, 2023, your affiant obtained a federal search warrant from the Honorable Sherry R. Fallon for the "jenray.shine@gmail.com" account. Google responded on or about June 14, 2023. Upon reviewing the return from Google, your affiant saw the same images described above, supra paragraph 31.  Your affiant also discovered emails from a website called Trueswingers indicating the user signed up for an account.  Your affiant also discovered an email from May 10, 2023 indicating that the TARGET ACCOUNT wanted to share photos with the "jenray.shine@gmail.com" account.    This    email    was    sent    shortly    before    the "jenray.shine@gmail.com" account uploaded the files containing or displaying apparent child pornography.

36.     On or about June 13, 2023, your affiant obtained a federal search warrant from the Honorable Jennifer L. Hall for the residence belonging to WILCOX, for WILCOX's two vehicles, and for the person of WILCOX.  OSI and Department of Homeland Security Homeland Security Investigations ("HSI") investigators, including myself, executed the warrant on June 15, 2023.

37.     WILCOX also consented to an interview with your affiant on June 15, 2023. During the interview, WILCOX admitted to using the account associated with "shawnnudst@gmail.com,"

and admitted to using the Trueswingers website and signing up for an account.  WILCOX admitted that he saw images containing child pornography on his account but stated he could not recall how they got onto his account. He stated that someone else probably sent them to him, that he viewed them, and that they then automatically downloaded to his Google Photos account. WILCOX also specifically described two images that had been part of the cybtertip.  In particular, he described one image depicting a female child wearing a collar and another image depicting a female child standing nude holding the erect penis of adult male. (Your affiant believes the description of the second image appears to be similar to the description of one of the photos referenced above, supra, paragraph 31(e)).  WILCOX stated he deleted the photos from the shawnnudst@gmail.com in approximately April or May 2023 after observing them in the Google Photos account because the individuals depicted in the photos were nude and appeared to be underage. He estimated approximately 25 photos were inappropriate.  WILCOX stated that his wife was not aware of the "shawnnudst@gmail.com" account.

38.     WILCOX's wife also consented to an interview with federal investigators on June 15, 2023.  She stated she was not aware of "shawnnudst@gmail.com" account.

39.     In summary, there is probable cause to believe that the TARGET ACCOUNT contains evidence of the SPECIFIED FEDERAL OFFENSES.  Specifically, WILCOX admitted to viewing images of apparent child pornography with a similar description as those in the cybertip located within the TARGET ACCOUNT. Additionally, an email between the TARGET ACCOUNT and the "jenray.shine@gmail.com" account sent shortly before "jenray.shine@gmail.com" account uploaded the files containing or displaying apparent child pornography indicated the TARGET ACCOUNT wanted to share photos with "jenray.shine@gmail.com."  Further, based on my training and experience and as described above in paragraph 12, supra, I know that individuals

who collect child pornography use email accounts, online storage accounts, and other online communication accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices. Thus, information connected to the use of a Google account may provide direct evidence of the offenses under investigation, as well as lead to the discovery of additional evidence.

40.    Information connected to the use of a Google account may also provide indirect evidence of the offenses under investigation, such as Internet searches indicative of an interest in children, or e-mails or application downloads indicating membership in forums on the dark web that are known to be dedicated to the sexual exploitation of children.

## **CONCLUSION**

41.     Based on the foregoing, there is probable cause for this Court to issue the requested warrant.

42.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.


Respectfully submitted,

*/s/ Randy Mullins*
Special Agent Randy Mullins
Air Force Office of Special Investigations

Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this  22nd    day of June, 2023


*Christopher J. Burke*
Honorable Christopher J. Burke
43. United States Magistrate Judge

## <u>ATTACHMENT A</u>

### Property to be Searched

This warrant applies to information associated with Google account "shawnnudst@gmail.com" (the "TARGET ACCOUNT"), that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f). The Delaware Internet Crimes Against Children ("ICAC") submitted a preservation request on or about **May 31, 2023, reference # ICAC 23-581**. Google is required to disclose to the government for each account or identifier listed in Attachment A ("the Account") the following information, unless otherwise indicated:

**A.  Google Account Information**

1. All business records and subscriber information, in any form kept, pertaining to the Account, including:

   a. Names (including subscriber names, user names, and screen names);

   b. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

   c. Telephone numbers, including SMS recovery and alternate sign-in numbers;

   d. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

   e. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

   f. Length of service (including start date and creation IP) and types of service utilized;

g.   Means and source of payment (including any credit card or bank account number), and detailed billing records;

h.   Change history and associated timestamps; and

i.   All cookie and user-specific advertising data, including third-party cookies

**B.   <u>Gmail Account Information</u>**

2.   Gmail specific subscriber information, login and logout IP addresses and associated timestamps;

3.   Gmail specific non-content email header information, originating message IP addresses, and account settings;

4.   The contents of all e-mails, attachments and chat messages stored in the account, including copies of e-mails sent to and from the account, draft e-mails, the source and destination e-mails sent, addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

5.   Contents of all available deleted emails;

**C.   <u>Devices Associated to the Account</u>**

6.   All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

7.   Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, usernames, source and destination IP address, name of accessed Google service, and all activity logs

**D.   <u>Google Location Information</u>**

8.   All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

**E.   <u>Browsing, Search, and Application History Information</u>**

9.   All Internet search and browsing history, and application usage history, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill

information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

Google is hereby ordered to disclose the above information to the government. **Google shall disclose responsive data, if any, by responding through the LERS portal to randy.mullins@lers.google or by sending to randy.c.mullins@leo.gov, or the Air Force Office of Special Investigations, 639 Atlantic St, Dover, Delaware, 19902, ATTN: Special Agent Randy Mullins, using UPS or another courier service, notwithstanding 18 U.S.C. 2252A or similar statute or code.**

## II.     Information to be Seized by Law Enforcement Personnel

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of Title 18, United States Code, Section 2252A(a)(1) (Transportation of Child Pornography) and Title 18, United States Code, Section 2252A(a)(5)(B) (Possession of Child Pornography) (hereinafter, the "SPECIFIED FEDERAL OFFENSES"), including but not limited to information pertaining to the following matters:

a.     Any and all records that relate in any way to the account described in Attachment A which is evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSES, specifically that relate to the following:

1.     Images, videos and other files depicting the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

2.     Communications or documentations regarding the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

3.     Communication or documentation regarding access to and/or interaction with minors, to include the enticement of a minor;

4.     All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of the SPECIFIED FEDERAL OFFENSES under investigation;

5.     Communication, information, documentation and records relating to who created, used, accessed, or communicated with the account or identifier, including records about their identities and whereabouts;

6.     Evidence of the times the account or identifier listed on Attachment A was used;

7.     Evidence indicating the account owner's state of mind as it relates to the SPECIFIED FEDERAL OFFENSES under investigation;

8.     All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

9.     Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts;

4

10.      Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

11.      All "address books" or other lists of contacts.